UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORROSION CONTROL
CONSULTANTS & LABS, INC.,

    Plaintiff,

v.

                                    Case No. 1:06-CV-216
                                    Hon. Hugh W. Brenneman, Jr.

MAXUM INDEMNITY COMPANY,

    Defendant.
_____/

**OPINION**

Plaintiff, Corrosion Control Consultants & Labs, Inc. ("Corrosion Control") has filed a two-count complaint against defendant Maxum Indemnity Company ("Maxum") seeking damages and declaratory relief. This matter is now before the court on the parties' cross-motions for summary judgment (docket nos. 16 and 19).

**I.    Background**

This federal action arises from a lawsuit filed in Florida state court on December 14, 2005, entitled *Post, Buckley, Schuh & Jernigan, Inc. v. Corrosion Control Consultants & Labs, Inc.*, No. 05-24413 CA 15, 11th Judicial Circuit (Miami-Dade County, Florida) (the "Florida lawsuit").

**A.    The Florida lawsuit**

The allegations in the Florida lawsuit are summarized as follows.[1] Post, Buckley, Schuh & Jernigan, Inc. ("PBS&J") provided professional services as a consultant to the Miami-Dade County Transit Agency ("Transit Agency") with respect to a large painting job on the Metromover

---

[1] A complete copy of the complaint is attached to Maxum's Brief as Exh. H. *See* docket no. 18.

Brickell Extension (the "paint remediation project"). In 1997, PBS&J entered into an "subconsultant agreement" with Corrosion Control as the "subconsultant." Florida lawsuit complaint at ¶ 10. Under the subconsultant agreement, Corrosion Control agreed to:

> Perform preliminary investigation and follow-up to inspect and obtain additional samples from the Brickell Extension guideway. Perform laboratory testing on samples. Prepare and submit final report addressing findings of field and laboratory investigation.

*Id.* Corrosion Control also agreed to indemnify PBS&J against claims arising out of any "negligent act, error, omission or wrongful act of the subconsultant or anyone acting on its behalf." *Id.* at ¶ 11.

Mr. Jerry E. Byrd, P.E., was the vice-president and representative of Corrosion Control. *Id.* at ¶¶ 12, 14. Mr. Byrd prepared an evaluation report dated October 23, 1997 which contained recommendations to remediate the paint problem. *Id.* at ¶¶ 14-16. PBS&J relied on the evaluation report to prepare cost estimates for the paint remediation. *Id.* at ¶ 19. Ultimately, the costs for the paint remediation project exceeded PBS&J's estimates for the project. *Id.* at ¶ 27.

On May 13, 2002, representatives of the Transit Agency, the painting contractor, PBS&J and Corrosion Control met to discuss the paint remediation project. *Id.* at ¶ 28. They discussed such issues as "the fact that the warranty of the paint manufacturer had expired, as well as matters relating to the causes of the paint failure." *Id.* In a letter dated May 16, 2002, the Transit Agency "officially notified [PBS&J] that it intended to recover damages from [PBS&J] on account of work done on the Paint Remediation Project." *Id.* at ¶ 29. PBS&J "promptly notified" Corrosion Control that the Transit Agency "sought to recover damages from [PBS&J] on account of work done on the Paint Remediation Project." *Id.* at ¶ 30. "In doing so, [PBS&J] advised that while it would try to refute the [Transit Authority's] claim, [Corrosion Control] would ultimately be responsible to

indemnify [PBS&J] for its costs and liabilities incurred regarding same." *Id.* The next day, Mr. Byrd "acting on behalf of [Corrosion Control], wrote to [PBS&J] and discussed his contacts with Caroline (the paint manufacturer) prior to issuing the Evaluation Report" and other matters related to the paint remediation projects. *Id.* at ¶ 31.

Corrosion Control "actively participated" in the defense of the Transit Authority's claim against PBS&J, including discussions and negotiations related to that claim. *Id.* at ¶ 32. In a letter dated August 21, 2003, the Transit Authority served an official notice against PBS&J demanding $691,214.00 in damages, while reserving the right to recover an additional $2.25 million for projected work. *Id.* at ¶ 33. PBS&J "promptly communicated" this demand to Corrosion Control. *Id.*

On April 12, 2004, PBS&J reached a settlement with Miami-Dade County for the sum of $500,000.00, consisting of $375,000.00 in cash and $125,000.00 in future services in kind that PBS&J promised to provide to the County. *Id.* at ¶ 35. In a letter dated April 20, 2004, PBS&J "wrote to [Corrosion Control] and reiterated [PBS&J's] demand for indemnification from [Corrosion Control], as provided for under the indemnity clause in the Subconsultant Agreement, and specified its claim in the amount of $500,000." *Id.* at ¶ 36.

     **B.**     **The Federal lawsuit**

On March 6, 2006, Corrosion Control filed a two-count complaint against Maxum in the Kent County Circuit Court. In Count I, Corrosion Control alleges that Maxum breached its obligation to defend and indemnify Corrosion Control with respect to PBS&J's claim. In Count II, Corrosion Control seeks a judgment declaring that Maxum has both a duty to defend and a duty to indemnify Corrosion Control against the claims asserted by PBS&J in the Florida lawsuit. The Kent

County lawsuit was removed to federal court on March 29, 2006 pursuant to this court's diversity jurisdiction.  *See* 28 U.S.C. § 1332.

### C. The parties' motions

Maxum seeks summary judgment on the ground that it has no duty to defend Corrosion Control in the Florida lawsuit, because the allegations of the complaint in that suit demonstrate that PBS&J's claim pre-dated the effective date of the "claims made" insurance policies issued to Corrosion Control.  Maxum contends that the lack of a duty to defend eliminates any duty to indemnify under the policies.

Corrosion Control seeks summary judgment on the ground that PBS&J made its claim while the "claims made" policies were in effect.  Corrosion Control contends that Maxum has both a duty to defend and a duty to indemnify it against PBS&J's claim asserted in the Florida lawsuit.

The motions before the court are limited to Corrosion Control's claim for declaratory relief as set forth in Count II.  The Declaratory Judgment Act provides in pertinent part that, "[i[n case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  *See generally*, *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 453 (6th Cir. 2003).  Maxum does not dispute this court's jurisdiction to enter a declaratory judgment in this action.

### II. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Discussion

#### A. The insurance policies

The insurance policies in this suit are "claims made" policies. " [A] 'discovery' or 'claims made' policy is one in which indemnity is provided no matter when the alleged error or omission or act of negligence occurred, provided the misdeed complained of is discovered and the claim for indemnity is made against the insurer during the policy period." *Stine v. Continental Casualty Co.*, 419 Mich. 89, 97, 349 N.W.2d 127 (1984). *See generally, St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 (1978) ("[a]n 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy").

Maxum issued two "Architects and Engineers Professional Liability (Claims Made)" policies to Corrosion Control: Policy No. PFP 6000737-01 which covered the policy period from

October 23, 2003 to October 23, 2004; and, Policy No. PFP 6000737-02 which covered the policy period from October 23, 2004 to October 23, 2005. *See* Policies attached to Compl. as Exhs. 1 and 2. The policies contained a retroactive coverage date of October 23, 1995. *Id.*

> The policies contain the following coverage provisions in Section I, ¶ 1:
>
> A.  We will pay those sums that the "insured" becomes legally obligated to pay as "damages" because of any negligent act, error or omission in the rendering of or failure to render "professional services" by an "insured" or by any person for whose negligent acts, errors or omissions an "insured" is legally responsible. We will have the right and duty to defend the "insured" against any "suit" seeking those "damages." However, we will have no duty to defend the "insured" against any "suit" seeking "damages" for a negligent act, error or omission to which the insurance does not apply. We may, at our discretion, investigate any negligent act, error or omission and settle any "claim" or "suit" that may result. . . .
>
> B.  This insurance applies only if: . . .
>
>    (3)  A claim for damages because of the rendering of or the failure to render "professional services" is first made against any "insured," in accordance with Paragraph C. below, during the policy period or any Extended Reporting Period we provide.
>
> C.  A "claim" by a person or organization seeking "damages" will be deemed to have been made at the earlier of the following times:
>
>    (1)  When notice of such "claim" is received by any "insured" or by us, whichever comes first; or
>
>    (2)  When we make settlement in accordance with paragraph 1.A. above.
>
>    All "claims" made during the "coverage period" and arising out of a single negligence act, error, or

6

>omission or a series of related acts, errors or omissions, shall be considered first made during the policy period or Extended Reporting Period in which the earliest "claim," arising out of such negligent acts, errors or omissions were first made, and all such "claims" shall be subject to the limit of "insurance" stated in the Declarations of the Policy which applies to such earliest "claim."

Finally, in Section VI, ¶ 2, the policies define a "claim" as follows:

>"Claim" means a means a written or verbal demand received by the "insured" for money or services, including service of "suit" or institution of arbitration proceedings against an "insured."

### B.       Maxum's duty to defend

Neither party disputes that Michigan law applies to determine Maxum's duties to defend and to indemnify Corrosion Control. While both of these duties arise from the policy language, *Oakland County Board of County Road Commissioners v. Michigan Property & Casualty Guaranty Association*, 456 Mich. 590, 601, n. 6, 575 N.W.2d 751 (1998), "[t]he duty to defend and the duty to indemnify are distinct and separable duties." *Michigan Educational Employees Mutual Insurance Company v. Turow*, 242 Mich. App. 112, 116, 617 N.W.2d 725 (2000). *See Stockdale v. Jamison*, 416 Mich. 217, 225, 330 N.W.2d 389 (1982) ("[a]n insurer's duty to defend is independent of its duty to pay"); *Illinois Employers Ins. of Wausau v. Dragovich*, 139 Mich. App. 502, 506, 362 N.W.2d 767 (1984) ("the duty to defend and the duty to provide coverage are not synonymous").

An insurer's duty to defend is broader than the duty to indemnify. *American Bumper and Manufacturing Co. v. Hartford Fire Insurance Co.*, 452 Mich. 440, 450-51, 550 N.W.2d 475 (1996). The duty to defend depends upon the allegations in the third-party's complaint against the

insured. *Reurink Brothers v. Maryland Casualty Co.*, 131 Mich.App. 139, 143, 345 N.W.2d 659 (1983). An insurer must provide a defense if a third party's allegations against the insured "even arguably come within the policy coverage." *American Bumper*, 452 Mich. at 451. However, the insured's duty to defend cannot be limited by the precise language of the pleadings. *Id.* at 452. As the court observed in *Shepard Marine Construction Co. v. Maryland Casualty Co.*, 73 Mich. App. 62, 65, 250 N.W.2d 541 (1977), an insurer "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable." Thus, a insurer has a duty to look behind the third party's allegations against the insured to analyze whether coverage is possible. *American Bumper*, 452 Mich. at 452. Any doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy must be resolved in the insured's favor. *Id.*

The duty to defend is related to the duty to indemnify, because it arises only with respect to insurance afforded by the policy. *American Bumper*, 452 Mich. at 450. "If the policy does not apply, there is no duty to defend." *Id.* "For purposes of the duty to defend, when coverage depends on an unresolved factual dispute, a potential for coverage exists until the insurer can conclusively establish in a judicial proceeding that there is no coverage." Lee R. Russ, et al., *Couch on Insurance 3D*, § 200.12 (footnote omitted). *See Polkow v. Citizens Insurance Company*, 438 Mich. 174, 180, 476 N.W.2d 382 (1991) (fairness required that the insurer has a duty to defend until there is sufficient factual development to determine whether a pollution exclusion clause applied); *Bertrand v. Pacific Employers Insurance Company*, No. 219724, 2001 WL 1464524 at * 3 (Mich. App. Nov. 16, 2001) (factual dispute as to whether person was an employee covered by insurance policy). "An insurer's duty to defend is a continuing one, and continues until the underlying action

is resolved, or it is shown that there is no potential for coverage." *Couch on Insurance 3D*, § 200.29 (footnotes omitted).

Here, Maxum has "constructed a formal fortress" behind PBS&J's complaint to deny Corrosion Control a defense under the policy. Specifically, Maxum relies on PBS&J's allegation that it "promptly notified" Corrosion Control of the Transit Agency's claim sometime after May 16, 2002 and that PBS&J advised Corrosion Control that it would ultimately be responsible to indemnify PBS&J for its costs and liabilities incurred in the paint remediation project.

Maxum presents two affidavits to support its motion. One affidavit is from Mr. Peter DeJesso, vice president of claims/claims manager at Maxum, which states in pertinent part:

2. I am personally responsible for handling the claims that are the subject of this litigation, and this litigation.

3. Maxum received first notice of the claim made by [PBS&J] against [Corrosion Control] by fax letter dated November 4, 2005. . .

4. After review of all of the material submitted in conjunction with the Maxum policies, Maxum disclaimed coverage for this matter by letter dated December 6, 2005, based upon the fact that the claim had been made against [Corrosion Control] before the inception of the first Maxum policy on October 23, 2003, and therefore the claim was not first made during the Maxum policy periods. . .

5. Maxum received a follow-up letter from [Corrosion Control] dated November 30, 2005, enclosing a copy of a "Draft" Complaint prepared by PBS&J to [Corrosion Control], which PBS&J indicated it was prepared to file. . .

6. The allegations of the "Draft" Complaint supported the conclusion that the claim had been made against [Corrosion Control] before the inception of the first Maxum policy on October 23, 2003, and therefore the claim was not first made during the Maxum policy periods, and Maxum maintained its disclaimer by responsive letter dated December 12, 2005. . .

7. Maxum received another follow-up letter dated December 12, 2005, requesting that Maxum reconsider its disclaimer of coverage. . .

8. After considering the points raised by [Corrosion Controls] in this December 12, 2005 letter, Maxum determined that there was no additional factual or legal information provided which would alter Maxum's disclaimer of coverage, and set this position forth in a response letter dated December 20, 2005. . .

9. By letter dated December 28, 2005, [Corrosion Control] forwarded a copy of the Complaint styled Post, Buckley, Schuh & Jernigan, Inc. v. Corrosion Control Consultants & Labs, Inc., Case No. 05-24413 CA 15, filed on or about December 12, 2005 in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida (hereinafter "Complaint") to Maxum. . .

10. By letter dated January 10, 2006, [Corrosion Control] against requested that Maxum reconsider its disclaimer of coverage for this matter. . .

11. The allegations of the Complaint supported the conclusion that the claim had been made against [Corrosion Control] before the inception of the first Maxum policy on October 23, 2003, and therefore the claim was not first made during the Maxum policy periods, and Maxum maintained its disclaimer by responsive letter dated January 17, 2006. . .

DeJesso Aff. attached to Maxum's Brief as Exh. 1.

In the December 6, 2005 letter, Maxum relied on the chronology as set forth by PBS&J's counsel and statements in PBS&J's April 20, 2004 demand letter to Corrosion Control as the basis for denying coverage. DeJesso letter (12/6/05) attached to DeJesso Aff. as Exh. B. That chronology was as follows: that Mr. Byrd had been copied on correspondence between PBS&J and the Transit Agency since May 12, 2002, that Corrosion Control was promptly notified of the Transit Agency's demand of May 16, 2002, that Corrosion Control actively participated in PBS&J's defense of the claim since May 16, 2002, and that Mr. Byrd attended a meeting between PBS&J and the Transit Agency on December 12, 2003 when the Transit Agency offered to settle in the amount of

10

$2.5 million. *Id.* In his December 12, 2005 correspondence, Mr. DeJesso essentially reiterated this factual scenario, relying on allegations as set forth in PBS&J's "draft" complaint directed at Corrosion Control. DeJesso letter (12/12/05) attached to DeJesso Aff. as Exh. D.

Maxum has also submitted the affidavit of one of its attorneys, Ms. Katherine Tammaro. *See* Tammaro Aff. attached to Maxum's Brief as Exh. 2. In her affidavit, Ms. Tammaro recites allegations set forth in paragraphs 28, 29, 30, 32, 33, 34, 35 and 36 of the complaint in the Florida lawsuit. *Id.* Ms. Tammaro does not claim to have any personal knowledge of Maxum's decision to deny coverage or of any discussions that occurred between PBS&J and Corrosion Control in 2002 or 2003. *Id.*

For its part, Corrosion Control disputes PBS&J's allegations that it received notice of the claim prior to December 1, 2003. Corrosion Control's counsel disagreed with Mr. DeJesso's suggestion that "a claim by PBS&J had been made against [Corrosion Control] by way of an alleged letter between PBS&J and [the Transit Agency] dated May 12, 2002." DeJong letter (12/12/05) attached to DeJesso Aff. as Exh. E.[2] In its Answer and Affirmative Defenses filed in the Florida lawsuit, Corrosion Control disputed PBS&J's chronology, denying the allegations that PBS&J notified it of the claim in May 2002 and "that it had any input" into PBS&J's settlement with the Transit Agency.[3]

---

[2] Mr. DeJesso subsequently pointed out that "the materials all allege that this letter was dated May 16, 2002" rather than "May 12, 2002." DeJesso Letter (12/20/05) attached to DeJesso Aff. as Exh. F.

[3] Corrosion Control provided the court and defense counsel with a copy of its Answer and Affirmative Defenses in the Florida lawsuit at the motion hearing on October 25, 2006. Plaintiff's counsel stated that Corrosion Control filed the answer on June 6, 2006.

In addition, Corrosion Control has presented two affidavits to refute Maxum's position that PBS&J made a claim prior to October 23, 2003. In his affidavit, Mr. Gary Tinklenberg, president of Corrosion Control, stated as follows:

4. While serving as president of [Corrosion Control], I never authorized any other individual to act on behalf of [Corrosion Control] as an authorized representative for the purpose of receiving claims for indemnification.

5. At no time before October 23, 2003, was I ever made aware of the possibility that PBS&J might assert any form of claim for any reason against [Corrosion Control].

6. At the time of our application for coverage from Maxum Indemnity Company, we truthfully represented that we were not aware of any potential claims against our company.

7. It was not until after December 1, 2003, that I was first made aware of any possible claim against our company.

8. I know of no person who could support Maxum's contention that [Corrosion Control] received notice from PBS&J before October 23, 2003 that PBS&J intended to pursue a claim against [Corrosion Control].

Tinklenberg Aff. attached to Corrosion Control's Response as Exh. A.

In his affidavit, Mr. Byrd stated as follows:

1. My name is Jerry Byrd, and I am a former employee of [Corrosion Control]. I retired my employment from [Corrosion Control] in January 2001.

2. During 2003, I was notified by PBS&J that Metro-Dade was bringing a claim against PBS&J for work it had performed for Metro-Dade. PBS&J asked me to assist them in evaluating the claim, and I did so. This involved my meeting with them on two or more occasions.

3. At no time before October 23, 2003, did anyone ever communicate to me even the possibility that PBS&J might bring a claim back against [Corrosion Control].

    4.       My very first notification by anyone from PBS&J that such a claim might be brought against [Corrosion Control] was by way of an email that I received on December 1, 2003.

    5.       I am not aware of any communication from anybody at PBS&J to anyone at [Corrosion Controls] before December 1, 2003 in which anyone from PBS&J would have communicated the possibility of bringing a claim against [Corrosion Control].

Byrd Aff. attached to Corrosion Control's Response as Exh. B.[4]

        Mr. DeJesso indicates that Maxum reviewed the allegations as set forth in PBS&J's complaint in the Florida lawsuit. However, despite Corrosion Control's objection raised to Maxum's reliance on "an alleged letter between PBS&J and [the Transit Agency] dated May 12, 2002," it appears that Maxum exerted little effort to look beyond the allegations to analyze whether coverage was possible. The subsequent affidavits of Mr. Byrd and Mr. Tinklenberg dispute PBS&J's allegations that Corrosion Control received notice of PBS&J's claim before December 1, 2003. Indeed, Corrosion Control denied PBS&J's allegations in the Florida lawsuit that PBS&J "promptly notified" Corrosion Control of the Transit Agency's claim in May 2002 and that Corrosion Control "had any input" into the settlement reached between PBS&J and the Transit Agency.[5]

        At a minimum, this court would have to find on this record that a factual issue exists with respect to whether Corrosion Control has coverage under the Maxum policy, i.e., whether Corrosion Control received notice of a "claim" before the effective date of the policy (October 23, 2003). Because a potential for coverage exists, Maxum has a duty to defend until the factual issue

---

[4] The court notes that while Mr. Byrd's affidavit does not address his May 17, 2002 letter to PBS&J, his affidavit is not inconsistent with the letter, which recounts his activities on the paint remediation project. Mr. Byrd's May 17, 2002 letter makes no reference to a claim asserted by PBS&J against Corrosion Control.

[5] While Maxum points out that all these denials by plaintiff came after Maxum disclaimed coverage, they are nevertheless made in a court pleading.

13

is resolved in a court proceeding. *See Couch on Insurance 3D*, § 200.12; *Polkow*, 438 Mich. at 180; *Bertrand*, 2001 WL 1464524 at * 3.

On this basis alone, the court finds that Maxum has a duty to defend Corrosion Control against PBS&J's claim in the Florida lawsuit. This does not, however, end the court's analysis.

### 2. Maxum's duty to indemnify

Next, both parties seek summary judgment on the issue of Maxum's duty to indemnify Corrosion Control. In its motion for summary judgment, Maxum contends that it has no duty to indemnify Corrosion Control because it has no duty to defend Corrosion Control against the claims made in Florida lawsuit. This argument is unavailing in light of the court's conclusion that Maxum has a duty to defend. After reviewing the record, the court concludes that Corrosion Control has coverage under the Maxum policies.

"An insurance policy is enforced in accordance with its terms." *Twichel v. MIC General Insurance Corporation*, 469 Mich. 524, 534, 676 N.W.2d 616 (2004). "Where the language is clear and unambiguous an insurance policy must be enforced as written." *Hayley v. Allstate Insurance Company*, 262 Mich. App. 571, 575, 686 N.W.2d 273 (2004). Here, neither party disputes that the insurance policy provides coverage only when notice of a claim is first made against an insured during the coverage period of the policies, in this case October 23, 2003 through October 23, 2005. The factual issue presented is whether Corrosion Control first received notice of PBS&J's claim before the policy effective date of October 23, 2003.

As the court previously discussed, both Mr. Tinklenberg and Mr. Byrd stated in their affidavits that Corrosion Control first became aware of a claim by PBS&J when Mr. Byrd received

the December 1, 2003 e-mail. Maxum does not dispute that this e-mail constituted "a written or verbal demand" under the policies, but contends that Corrosion Control first received notice of the claim prior to that in May 2002. Significantly, however, Maxum has not rebutted the statements set forth in the Tinklenberg and Byrd affidavits.

The affidavits of Mr. DeJesso and Ms. Tammaro are insufficient to create a genuine issue of fact on this issue. Since neither Mr. DeJesso nor Ms. Tammaro had personal knowledge of the events that occurred between PBS&J and Corrosion Control, their affidavits fail to meet the requirement of Fed. R. Civ. P. 56(e), which provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Both Mr. DeJesso and Ms. Tammaro rely on the allegations set forth in PBS&J's complaint. Such allegations are insufficient to rebut the affidavits of Mr. Byrd and Mr. Tinklenberg. *See generally*, Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). In this regard, the court does not view a second-hand recitation of PBS&J's April 20, 2004 demand letter that "Jerry Byrd of [Corrosion Control] has been copied on correspondence between PBS&J and [the Transit Agency] since May 21, 2002," or PBS&J's allegations that it "promptly" notified Corrosion Control of the Transit Agency's claims after receiving correspondence in May 2002 and August 2003, as creating a genuine issue of material fact on the claim issue.

Based upon this record, no genuine issue exists with respect to the fact that Corrosion Control first received a written or verbal demand from PBS&J on December 1, 2003. This claim

was made after the October 23, 2003 effective date of Maxum's Policy No. PFP 6000737-01. Accordingly, the court finds that Maxum has a duty under the policy to indemnify Corrosion Control against PBS&J's claims alleged in the Florida lawsuit.

### III. Conclusion

For reasons stated above, Corrosion Control's motion for summary judgment (docket no. 16) is **GRANTED** as to Count II, and Maxum's motion for summary judgment (docket no. 19) is **DENIED**.

Accordingly, Corrosion Control is entitled to a declaratory judgment that:

a. Maxum has a duty to defend Corrosion Control in the Florida lawsuit pursuant to the terms of its Policy No. PFP 6000737-01; and

b. Maxum has a duty to indemnify Corrosion Control in the Florida lawsuit pursuant to the terms of its Policy No. PFP 6000737-01.

An order consistent with this opinion shall be issued forthwith.


Date:   February 9, 2007                  /s/ Hugh W. Brenneman, Jr.
                                          Hugh W. Brenneman, Jr.
                                          U.S. Magistrate Judge